**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS LOCAL 17 PENSION FUND, *et al.*, | |
| Plaintiffs, | No. 20-cv-3301 |
| v. | Judge Franklin U. Valderrama |
| CEC ENVIRONMENT. INC., *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, the International Association of Heat and Frost Insulators Local 17 Pension Fund; the International Association of Heat and Frost Insulators Local 17 Welfare Fund; the International Association of Heat and Frost Insulators Local 17 Annuity Fund; the International Association of Heat and Frost Insulators and Asbestos Local 17 Joint Apprenticeship, Training, and Record Keeping Trust (collectively, Trust Funds), the Labor Management Cooperative Trust (LMCT), and the International Association of Heat and Frost Insulators and Allied Workers, Local 17 of Chicago, Illinois (Local 17), have brought suit against Defendants, CEC Environmental, Inc. (CEC) and Celtic Environmental, Inc. (Celtic) pursuant to the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and various provisions

of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, 1145. R. 1, Compl.[1]

Before the Court is Defendant Celtic's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). R. 18, Mot. Dismiss. For the reasons that follow, Celtic's Motion to Dismiss is denied.

## Background

CEC and Celtic are both employers engaged in the asbestos abatement, lead abatement, mold remediation, mechanical insulation work, and interior demolition work. Compl. ¶ 27. Joseph Smrz is the President of both CEC and Celtic. *Id.* ¶ 20. CEC and Celtic share the same management and employ some of the same employees. *Id.* ¶¶ 34–35. They operate out of the same building, which is owned by Celtic. *Id.* ¶¶ 22–23. At least one Local 17 member works for Celtic. *Id.* ¶¶ 33, 60.

Local 17 is a labor organization as defined by 29 U.S.C. § 185, and was at all relevant times a signatory to an Area Agreement with the Illinois Regional Insulation Contractors Association, Inc. (Area Agreement).[2] Compl. ¶¶ 1, 4, 10. Local 17's trade jurisdiction includes asbestos and lead removal, toxic waste cleanup, mold remediation, and application of firestopping materials. *Id.* ¶ 10, Exh. 1 at 46–47.

Since at least October 2008, CEC has been bound to a series of Area Agreements through successive Agreement of Consent Forms. Compl. ¶ 10, Exhs. 1, 2. Through the

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Area Agreements, CEC agreed to be bound by provisions of the Agreements and Declarations of Trust which created the Trust Funds. *Id.* ¶ 11. Celtic is a non-union company and is not a signatory to the Area Agreement with Local 17. *Id.* ¶ 18.

The Trust Funds are multiemployer plans pursuant to ERISA Section 2(37)(A), in that they receive contributions from numerous employers pursuant to the Area Agreements. Compl. ¶ 3; 29 U.S.C. § 1002(37)(A). The Labor Management Cooperative Trust (LMCT) is a labor-management cooperation committee established pursuant to the Labor-Management Cooperation Act of 1978, which also receives contributions pursuant to the Area Agreement. Compl. ¶¶ 4, 14; 29 U.S.C. § 175(a).

On June 4, 2020, Plaintiffs filed a two-count Complaint against CEC and Celtic. In Count I, Plaintiffs seek an order that Celtic is the alter ego of CEC. Count II seeks an order that Celtic constitutes a single employer with CEC. Both Counts I and II seek entry of an order that Celtic is bound to the terms of the Area Agreement with Local 17, entry of an order requiring Celtic to submit to a payroll compliance audit to determine the full amount of liability to the Plaintiffs, and entry of a judgment in favor of the Plaintiffs and against CEC and Celtic, jointly and severally, for all contributions and liquidated damages as revealed by the payroll audit.

Defendant Celtic moves to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1). Mot. Dismiss. For the reasons that follow, Celtic's Motion to Dismiss is denied.

### Standard of Review

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570

F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digital, Inc. v. Sears Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell,* 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor,* 875 F.3d at 853 (citing *Apex Digital,* 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital,* 572 F.3d at 444 (internal citations omitted).

## Analysis

As an initial matter, Plaintiffs insist that they are not seeking a determination that Celtic's employees are members of Local 17. R. 24, Resp. at 3. Plaintiffs concede that Celtic is not a signatory to the Area Agreement, but maintain that Celtic is still

bound to the Area Agreement based on the single-employer and alter-ego doctrines.[3] *Id.* at 2, 3; *see also* Compl. ¶ 18. Plaintiffs argue that Celtic is therefore liable for unpaid contributions for work performed by Celtic's employees performing work within Local 17's jurisdiction. Resp. at 3.

The "alter ego theory 'focuses on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.'" *Laborers' Pension Fund v. GA Paving, LLC*, 2018 WL 3659338, at *4 (N.D. Ill. Aug. 2, 2018) (quoting *Laborers' Pension Fund v. Green Demolition Contractors, Inc.*, 2016 WL 74682, at *3 (N.D. Ill. Jan. 7, 2016)). "The single employer doctrine holds that when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998). "Specifically, when two businesses are considered a 'single employer,' 'both businesses will be equally liable under a collective bargaining agreement entered on behalf of only one of them.'" *GA Paving*, 2018 WL 3659338, at *6 (quoting *Bd. of Trs. of the Pipe Fitters Ret. Fund. Local 597 v. Am. Weathermakers, Inc.*, 150 F. Supp. 3d 897, 905 (N.D. Ill. 2015)).

---

[3]Judge Chang, the previously assigned judge, denied with prejudice Celtic's Rule 12(b)(6) motion to dismiss Plaintiff's alter ego claim, finding that Plaintiffs had set forth a plausible alter-ego claim. R. 14.

Judge Chang also dismissed Celtic's earlier-filed Rule 12(b)(1) motion to dismiss without prejudice for procedural reasons. R. 14. Judge Chang noted that although "Celtic argued that Plaintiffs [were] seeking to deem the Local as the 'bargaining unit' for Celtic employees, as if Plaintiffs [were] attempting to displace the NLRB." *Id.* He continued, "[i]t is not at all clear that Plaintiffs seek that relief at all, rather than hold Celtic liable (as an alter ego of, or a single employer with, CEC) for the funding obligations owed for CEC employees." *Id.*

Celtic argues that, in order to find that Celtic bound to the Area Agreement under the alter-ego or single-employer doctrines and therefore is liable under the Area Agreement for any work done by its employees, the Court must determine whether Celtic and CEC's employees comprise a single bargaining unit. Mot. Dismiss at 2. Such a determination, insists Celtic, lies within the province of the National Labor Relations Board (NLRB). *Id.* at 6 (citing *Laborers' Pension Fund v. Joe Cachey Construction Co., Inc.*, 947 F. Supp. 365 (N.D. Ill. 1996)).

In *Joe Cachey*, the plaintiff union sought to enforce a collective bargaining agreement (CBA) that it had entered with Joe Cachey Construction Co. (Joe Cachey) and sought an audit pursuant to the agreement. 947 F. Supp. at 368. The plaintiff also argued that Future Masonry, a non-signatory, constituted a single employer with Joe Cachey, and thus was liable under the collective bargaining unit. *Id.* The court held that it lacked jurisdiction to bind Future Masonry to the CBA, even if Future Masonry was considered a single employer with Joe Cachey, a signatory to the agreement. *Id.* The court reasoned that in order to enforce the CBA on Future Masonry's employees, it would have to determine "the propriety of a single bargaining unit comprising the employees of the two employers." *Id.* at 369–71. The court found that it could not make this determination because bargaining unit determinations are within the sole jurisdiction of the NLRB. *Id.*

Although Celtic relies primarily on *Joe Cachey,* it ignores the fact that "[c]ourts routinely exercise jurisdiction over claims by labor union funds seeking to impose liability on non-signatory entities through either alter ego or single employer liability

6

. . . without engaging in a 'bargaining unit' analysis." *GA Paving, LLC*, 2018 WL 3659338, at *5; *see also Moriarty v. Svec.*, 164 F.3d 323 (7th Cir. 1998); *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Olsen,* 467 F. App'x 513 (7th Cir. 2012) (affirming grant of summary judgment to plaintiff union on single employer liability); *Shales v. Schroeder Asphalt Servs., Inc.*, 2013 WL 2242303, at *5 (N.D. Ill. May 21, 2013), *on reconsideration in part,* 2013 WL 6858775 (N.D. Ill. Dec. 30, 2013) ("[C]ourts clearly have jurisdiction to hold a third-party liable for unpaid benefit contributions owed by a signatory to a collective bargaining agreement if the third-party entity and the signatory constitute a single employer."); *Chicago Dist. Council of Carpenters Pension Fund v. Door Sys., Inc.*, 1999 WL 754696, at *4 (N.D. Ill. Sept. 10, 1999) (determining that the court has jurisdiction to determine which employees are "covered" by relevant CBAs because it is a question of contract interpretation rather than a bargaining unit analysis).

    The Seventh Circuit's decision in *Moriarty* is instructive. The defendant owner of a funeral home and livery business was sued by the trustee of multi-employer pension plans on behalf of the livery business's employees, whom the defendant claimed were not covered by the CBAs at issue. 164 F.3d at 325. Several days before the district court entered an order granting summary judgment to the trustee, the NLRB found that, although the funeral home and livery business constituted a single employer, the union, which represented employees at the funeral home, did not represent the livery business's employees for collective bargaining purposes. *Id.* at 326. The defendant argued on appeal that the NLRB's finding that the livery employees

7

were not part of the bargaining unit represented by the union meant that they were not covered by the CBAs the union had negotiated, and therefore the defendant did not owe contributions on their behalf. *Id.* at 327, 333. The defendant also argued that the district court lacked subject matter jurisdiction to decide whether the livery employees were entitled to contributions under the CBAs, contending that it was representational issue within the exclusive province of the NLRB. *Id.* at 333. According to the defendant, "single employer status alone can make a non-signatory entity liable under a collective bargaining agreement only after there has been a separate finding that both entities form a single bargaining unit. Not only is the bargaining unit determination necessary, . . . it is also within the NLRB's exclusive jurisdiction." *Id.* (internal citations omitted).

The Seventh Circuit affirmed the district court's holding that the defendant was required to contribute on behalf of the livery employees, rejecting the defendant's jurisdictional argument "because nothing in the . . . case implicate[d] representation or unfair labor practices. The only question [was] whether the terms of the CBAs entered into by the Funeral Home apply to employees of [the livery business]. Our Section 515 case law clearly establishes that we need not decide representational issues to impose liability for contributions to a multi-employer plan." *Id.* at 334. The Seventh Circuit further held that it was a matter of

> contract interpretation for the district court, and did not touch on any area of NLRB expertise. The court had to decide whether [livery business] employees were covered by the terms of the CBAs. The CBAs required contributions on behalf of all employees of employer members who performed livery services. Once the court found that [the livery business] and the Funeral Home were a single employer, and that [livery business] employees performed livery

8

> services, it could impose liability 'in accordance with the terms and conditions of [the] . . . agreement.' 29 U.S.C. § 1145. The CBAs do not define coverage based on any collective bargaining unit and no such requirement need be inferred. [citation omitted] . . . Because no NLRB issue is present here, the district court's decision concerning [the livery business's] liability was well within its jurisdiction.

*Id.* at 334–35 (quoting *Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 775 (7th Cir. 1998)).

Celtic attempts to distinguish this principle by emphasizing that the text of the Area Agreement necessitates a determination that Celtic's employees are members of Local 17, meaning this Court would in fact have to engage in a bargaining unit determination. Mot. Dismiss at 2, 5–7; R. 25, Reply at 2–3. True, the Area Agreement states that each employer bound by the Agreement, "acknowledges and agrees that there is no good faith doubt that the union has been authorized to and in fact does represent such majority of employees." Compl. Exh. 1 at 2; *see also* Reply at 2. But Celtic ignores the fact that the LMRA requires that the bargaining agent (union) for all employees in the appropriate bargaining unit must be the representative "designated or selected for the purposes of collective bargaining *by the majority of the employees* . . . ." 29 U.S.C. § 159(a) (emphasis added); *see also Carpenters Loc. Union No. 1846 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 522 (5th Cir. 1982), *amended,* (5th Cir. Dec. 8, 1982) ("Ordinarily, an agreement recognizing a union as the exclusive bargaining representative of an employer's work force when in fact only a minority of employees have authorized the union to represent their interests would constitute an unfair labor practice.") (citing *NLRB v. Local Union 103, International Association of Bridge Workers (Higdon*

9

*Construction Co.)*, 434 U.S. 335, 344 (1978); *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 737 (1961)). Pre-hire agreements under Section 8(f) of the NLRA are the limited exception to the majority rule. *See Pratt-Farnsworth, Inc.*, 690 F.2d at 522 (citing 29 U.S.C. § 158(f)).

Therefore, although the Seventh Circuit and Northern District of Illinois cases cited above—which find that courts have jurisdiction over claims imposing liability on non-signatory entities under the alter-ego or single-employers doctrines without engaging in a bargaining unit analysis—do not specify that the CBAs at issue include a majority representation clause, most, if not all, agreements contain such a clause as required by statute. *See, e.g.*, *Laborers' Pension Fund v. GA Paving, LLC*, 17-cv-891 Dkt 1 at 17 (N.D. Ill. Feb. 2, 2017) (CBA states that the employer recognizes the union as the "sole and exclusive bargaining representative under Section 9(a) of the NLRA . . . based on the Union's having shown, or having offered to show, **evidence of its majority support**") (emphasis added); *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Olsen*, 3:03-cv-3250 Dkt. 31-3 at 1 (C.D. Ill. Feb. 10, 2006) (CBA states that "[t]he Employer agreed and is satisfied that the UNION is **supported by a majority of the employees** of the Employer presently working within the territorial and occupational jurisdiction of the Union.") (emphasis added).

Therefore, simply because the Area Agreement states that bound employers recognize that a majority of employees are members of Local 17 does not necessitate that this Court engage in a bargaining unit analysis when determining whether Celtic is liable for benefits contributions for its employees (or is liable for delinquent

10

contributions owed for CEC employees). This Court, therefore, has jurisdiction to determine whether certain Celtic employees performed work covered by the Area Agreements, and need not determine whether Celtic's employees are bargaining unit *members* of Local 17. *See Moriarty*, 164 F.3d at 334; *Door Sys.*, 1999 WL 754696, at *5.

Plaintiffs invite the Court to follow *Pratt-Farnsworth, Inc.*, which found that district courts have authority to make a unit determination where that is essential to resolve a breach of contract claim. Resp. at 6–7 (citing 690 F.2d. at 504). Because the Court finds that it has jurisdiction to determine whether Celtic is liable for contributions for its own employees performing work within Local 17's jurisdiction without making a bargaining unit analysis, the Court need not decide the issue.

## Conclusion

For the foregoing reasons, Celtic's Motion to Dismiss [18] is denied. Celtic is directed to answer the Complaint by April 20, 2021.

DATED: March 30, 2021

Franklin U. Valderrama
United States District Judge